THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN T. FARRELL, Defendant-Appellant.

Third District    No. 79-987

Opinion filed October 27, 1980.—Rehearing denied November 25, 1980.

Robert Agostinelli and Karen S. Szpajer, both of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Hinterlong, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendant, John T. Farrell, appeals from a conviction for attempt (burglary) (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4 and 19—1), basically, on the ground of collateral estoppel.

On August 8, 1979, the defendant was charged by indictment with two offenses, attempt (burglary) and criminal damage to property valued at less than $150. (Ill. Rev. Stat. 1979, ch. 38, par. 21—1(a).) In a trial in October 1979, the jury returned a verdict of not guilty to the charge of criminal damage to property, but was unable, after seven hours of deliberation, to arrive at a verdict on the charge of attempt (burglary). The court thereupon found the jury to be "hung" and declared a mistrial. The defendant was retried for attempt (burglary) and was convicted. He was sentenced to four years' imprisonment. Defendant was 23 years old at that time.

The record discloses that, on August 4, 1979, at about 4 a.m., Gary Lee Nixon, a resident of a neighboring trailer court, observed two men standing on a shed roof, prying at a window on the Hilltop Tavern, west of Ottawa on U.S. Highway 6. Mr. Nixon telephoned the county sheriff. Several sheriff's deputies, later joined by Ottawa police officers, arrived at the scene to search for the suspects in the woods adjoining the tavern and along Route 6. Mr. Nixon described one of the suspects as having short dark hair and wearing a white T-shirt and blue jeans. About half an hour after their arrival, the police officers arrested the defendant as he walked eastward on Route 6. The defendant was sweating heavily. A white T-shirt was stuffed into the back pocket of his blue jeans. His boots were covered with mud, and the legs of his jeans were wet. His arms and torso were scratched and mosquito-bitten.

At the defendant's first trial, the county and city police officers testified to the circumstances of his arrest. Mr. Nixon identified the defendant as one of the men he had seen prying at the window of the Hilltop Tavern. In addition, Edward "Mickey" Stevens testified that, while he was a cell-mate of the defendant in the La Salle county jail, the defendant had told Stevens that he (Farrell) had observed a large poker game being played at the Hilltop Tavern, that the money had been locked in a drawer, and that he (Farrell) tried to enter the building through a window. All of this testimony was essentially the same at the defendant's

second trial, except that, at the second trial, Mr. Nixon stated that he had not seen the faces of the men who pried at the window of the tavern, but that the defendant had been among a group of men sitting in front of the tavern after the 3 a.m. closing time and prior to the 4 a.m. incident. At the second trial, Mickey Stevens did not say that the defendant had told him that he tried to enter the building, but stated that the defendant told him he observed the poker game through the second story window and intended to break in to get the money.

Two witnesses testified regarding the condition of the window at which the defendant allegedly pried. Deputy Sheriff Michael Mahar testified, "The screen had been unfastened from the building. * * * It was rolled. * * * Approximately half of the screen was away from the window." Later in his testimony, while pointing to a photograph of the tavern, Deputy Mahar stated, "The damaged screen was on a smaller window here on the left. * * * The smaller of the two windows had been damaged." When asked if the window depicted in the photograph was in the same condition as it had been on August 4, 1979, Deputy Mahar responded, "No. The window seems to have been repaired."

Lillian Hicks, half-owner of the Hilltop Tavern, testified "When we went up there, the window was all broken. * * * The—we have heavy plastic on the outside and a heavy screen—real thick screen that was all stapled in and it was all tore up. * * * The screen—this whole screen was pulled up. You could see it was all half up. He had pulled all of the screen up, whoever did it." The prosecutor showed her the aforementioned photograph and asked her "if this is the photograph of the window that the screen was removed from the window partially?" She answered, "Yes. That window there." Subsequent to August 4, the tavern had been burglarized, the breakin occurring through the same window.

The eye-witness, Gary Nixon, testified that he saw the defendant and another man "prying the screen open on the window trying to get in." They were "trying to pry the window open. I saw them trying to pry the screen off the window. She had a chimney wire screen covering the window. They were prying it off. * * * About 4:30 they were on the roof trying to pry the window open. * * * I observed them trying to pry the screen off the window."

The defendant argues on appeal that his acquittal on the criminal damage to property charge must estop his conviction for attempt (burglary) at the second trial. The reasoning of his argument is as follows: He contends that the jury in his second trial must have found that either he or his companion pried at the screen of the tavern. Merely standing on the roof of the shed would have been insufficient to constitute a substantial step toward burglary. (*People v. Brown* (1979), 75 Ill. App. 3d 503, 394 N.E.2d 63.) The defendant claims that, at his first trial, it was undisputed that the screen and plastic on the window had been damaged (although

the indictment refers only to damage to a screen). Furthermore, defendant asserts the identity of the defendant as one of the perpetrators could not have been in doubt or the jury would have acquitted on both charges. Therefore, the jury must have concluded that neither the defendant nor his companion pried at the window. The defendant argues that this "finding" by the jury at his first trial precludes his conviction at a second trial of a crime which necessarily alleges an act contrary to the jury finding at the first trial. On this basis, the defendant argues that the State is collaterally estopped from maintaining that either he or his companion pried at the window, and, furthermore, the State had no other proof of a substantial step toward burglary. Thus, argues the defendant, the second trial put the defendant twice in jeopardy. *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189.

■■■ It is well established in Illinois that "[w]here some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not. This is sometimes denominated as estoppel by verdict. * * *

While this doctrine is more frequently invoked in civil cases, there is no doubt but that it applies equally in criminal cases." (*People v. Haran* (1963), 27 Ill. 2d 229, 231-32, 188 N.E.2d 707.) A failure to invoke the collateral estoppel doctrine in a criminal case may constitute a violation of the defendant's right not to be put twice in jeopardy. *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189.

■■ "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, * * * a court [must] 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Ashe v. Swenson* (1970), 397 U.S. 436, 444; 25 L. Ed. 2d 469, 475-76, 90 S. Ct. 1189, 1194; see also *People v. Kennedy* (1978), 60 Ill. App. 3d 947, 377 N.E.2d 830.

The fallacy in defendant's argument is his equation of criminal damage to property and the act of prying a screen away from a window. A jury, given the record of the first trial, could well have concluded that the defendant or his companion had pried the screen away from the window of the Hilltop Tavern and still have acquitted this defendant of criminal damage to property.

The indictment charged that the defendant had damaged "a screen." Although Lillian Hicks at first spoke of the plastic and/or screen as being

"all tore up," she subsequently refined her testimony so that the single concrete image which emerged was that of a screen, which had been stapled over a window, found pulled away from the window on the bottom half, with the top half of the screen remaining affixed. The testimony of the other witnesses and the statements of counsel are all consistent with that image. Deputy Mahar's characterization of the screen and window as "damaged" was conclusory and not helpful to the jury. From the evidence presented at the first trial, a reasonable jury could well have visualized a screen being intentionally pried from a window for the purpose of gaining entry to the building through that window, while just as clearly, seeing in the mind's eye a structure which suffered no physical damage, other than the forceful removal of a few staples from around a window frame. A reasonable jury could have found such damage to be *de minimis*. It might even have found that the State failed to prove that such damage affected the screen itself, as had been alleged in the indictment.

The defendant argues that the hypothesis that a jury could have found that the screen was pulled from the window without finding that this particular piece of property had been criminally damaged is "straining to postulate hypertechnical and unrealistic grounds on which the jury could conceivably have rested its conclusion." (See *Ashe v. Swenson* (1970), 397 U.S. 436, 444, 25 L. Ed. 2d 469, 475-76, 90 S. Ct. 1189, 1194.) Despite the strong evidence which the State presented as to the prying away from the window of the screen, the evidence which the State presented on the issue of damage to the property was so weak and illusory that a jury which convicted on the charge of criminal damage to property, on the basis of the evidence presented at defendant's first trial, would truly have been straining and convicting on hypertechnical grounds.

The prosecution, in its closing argument made no mention of damage to property. It referred one time to testimony by Mr. Nixon that he had seen one of two individuals "pulling on the screen." The defense, in its closing argument emphasized the lack of proof as to the damage inflicted upon the screen:

> "Nixon gets on the stand and testifies that he saw two people prying. He doesn't say they tore it apart. He said prying. * * * How did the window look before August 4th? How does it look now? * * * And that goes to the second element, the second crime that has been charged, criminal damage to property. * * * Where is the testimony that the screen was damaged? Where is it at? Damage. There is no value put on—she never got on the stand and said it cost me 60 bucks to replace it or 30 bucks to replace it or whether it was damaged or not. Where is the damage? * * * He has the burden."

The prosecution's only rebuttal on this point was, "It is also clear that

when you pull a screen away from a window you have caused damage. I don't know how much clearer you can get than that."

■■ "[T]he doctrine of estoppel by verdict comes into effect only where it can be ascertained with certainty that the verdict in the first case necessarily determined a particular fact." (*People v. Haran* (1963), 27 Ill. 2d 229, 235, 188 N.E.2d 707.) Under the record of this case, it cannot be ascertained with certainty that the acquittal of John Farrell of the crime of criminal damage to property necessarily determined that neither John Farrell nor his accomplice took a substantial step toward burglary by prying the screen on the Hilltop Tavern.

■■ The defendant next argues that the failure of his counsel to raise the issue of collateral estoppel prior to his second trial, for the purpose of either foreclosing a second trial or limiting the evidence to be permitted therein, constituted ineffective assistance of counsel. To support the charge of ineffective assistance, the defendant must demonstrate actual incompetence of counsel which results in substantial prejudice to the defendant without which the outcome would probably have been different. (*People v. Goerger* (1972), 52 Ill. 2d 403, 409, 288 N.E.2d 416.) In the second trial for attempt (burglary) no significant evidence was presented which tended to establish the fact of damage to the complainant's screen. Lillian Hicks, the half-owner of the tavern, testified, stating, "When I opened up the window on the south end, the door was—sliding door was pushed open and the plastic was off of it and this wire—the screen wire that we got over it that was all stapled down was all pulled up." She further indicated, as she had not at the first trial, that the window had not been in that condition when she left that evening. At the second trial, the other half-owner of the Hilltop Tavern, Geno Monterastelli, also testified. He stated that "[t]he window had been pulled out." Specifically, "the screen and a plastic molding above it" had been pulled out. Deputy Mahar testified that "the window itself inside had been raised and that the screening—the screen wire on the outside of the window, was unfastened from the building at the lower portion of the window." Thus, it is clear that no more than the *de minimis* damage to the screen described at the first trial was testified to in the second. The defendant was not prejudiced by his counsel's failure to request that evidence of criminal damage to the Hilltop Tavern be excluded.

For the reasons herein indicated, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.